1  THE O'MARA LAW FIRM, P.C.
   DAVID C. O'MARA
2  NEVADA BAR NO. 8599
   311 East Liberty St.
3  Reno, Nevada 89501
   (775) 323-1321
4  (775) 323-4082 (fax)

5  JOSHUA L. SEIFERT PLLC
   Joshua L. Seifert, Esq. (*Pro Hac Vice*)
6  jseifert@seifertpllc.com
7  175 Varick Street
   New York, NY 10014
8  (646) 470-2647

9  SLARSKEY LLC
   David Slarskey, Esq. (*Pro Hac Vice*)
10 dslarskey@slarskey.com
11 800 Third Avenue, 18th Floor
   New York, NY 10022
12 (212) 658-0661

13 *Counsel for Plaintiffs*

```
        FILED        ____ RECEIVED
   ____ ENTERED      ____ SERVED ON
                     COUNSEL/PARTIES OF RECORD

           JUN 22 2018

        CLERK US DISTRICT COURT
          DISTRICT OF NEVADA
   BY: _____ DEPUTY
```

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| ADDISON HEMPEL, CASSIDY HEMPEL, CHRISTINE HEMPEL, HUGH HEMPEL, and SOLUTION THERAPEUTICS, <br><br> Plaintiffs, <br><br> v. <br><br> CYDAN DEVELOPMENT, INC., CYDAN II, INC., VTESSE, INC., SUCAMPO PHARMACEUTICALS, INC., and DOES I-X and ROE CORPORATIONS I-V, inclusive, <br><br> Defendants. | Case No. 3:18-cv-00008-MMD-VPC <br><br> **STIPULATION AND [PROPOSED] ORDER REGARDING ESI AND TECHNICAL SPECIFICATIONS GOVERNING DOCUMENT PRODUCTION** |

This matter comes before the Court by stipulation of Plaintiffs Addison Hempel, Cassidy Hempel, Christine Hempel, Hugh Hempel, and Solution Therapeutics, and Defendants Cydan Development, Inc., Cydan II, Inc., Vtesse, Inc., and Sucampo Pharmaceuticals, Inc. (collectively, the

"Parties"), to address production of ESI (as defined below) and technical specifications governing document production. Having found that the Parties, by and between their undersigned counsel, have stipulated and agreed to the terms set forth herein, and good cause having been shown, the following Stipulation shall be entered:

**SPECIFICATIONS GOVERNING ESI AND DOCUMENT PRODUCTION**

**I.   DEFINITIONS**

1. "Documents" means any Hard Copy Documents, ESI, or other material produced in this litigation in response to a Party's document requests, compulsory process, or voluntarily.

2. "ESI" means electronically stored information and includes, but is not limited to, e-mails and attachments, instant messaging and other electronic communications, word processing documents, text files, image files, container files, hard drives, external/internal drives, shared drives, thumbdrives, servers, spreadsheets, slide presentations, graphics, audio files (including, but not limited to voicemail and telephone recordings), databases, calendars, telephone logs, transaction logs, internet usage files, offline storage or information stored on clouds or removable media, information contained on laptops or other portable devices and network access information, Native Files and the corresponding Metadata that is ordinarily maintained.

3. "Hard Copy Document" means a document that is maintained in hard copy or paper form.

4. "Image File" means a representation of ESI produced by (i) converting a Native File into a standard image format capable of being viewed and printed on standard computer systems; or (ii) scanning a Hard Copy Document into a standard image file capable of being viewed and printed on standard computer systems.

5. "Load File" means a file containing commands and information necessary to import coded, captured, or extracted data (including Metadata, extracted text, and the links between related records or document images) from ESI into a document management database, such as Relativity.

6. "Metadata" means: (i) information embedded in a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File; and (ii) information generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted, sent, received or otherwise manipulated by a user of such system. Metadata is a subset of ESI.

7. "Native File" means ESI in the electronic format of the application in which such ESI was created, viewed and/or modified. Native Files are a subset of ESI.

8. "OCR" means Optical Character Recognition, and is the machine recognition of printed characters from Image Files or other non-searchable text contained in a Document into machine-encoded text so that the text can be indexed and searched for specific characters, words, or phrases.

9. "Producing Party" means a Party that produces Hard Copy Documents, ESI, or other material in connection with this litigation in response to document requests, compulsory process, or voluntarily.

10. "Receiving Party" means a Party that receives Hard Copy Documents, ESI, or other material from a Producing Party in connection with this action.

## II. GENERAL PROVISIONS

11. <u>Scope</u>. This Stipulation and Order Regarding ESI and Technical Specifications Governing Document Production ("this Order") specifies the form and manner in which the Parties shall be required to produce ESI and Hard Copy Documents for use in the above-captioned matter. The production of ESI and Hard Copy Documents in a manner consistent with the specifications set forth in this Order shall be sufficient to satisfy a Producing Party's obligation to produce its materials in reasonably useable form and as they are maintained in the ordinary course of business.

12. <u>Liaisons and Conferrals</u>. Below each Party identifies its "discovery liaison" who is and will be knowledgeable about and responsible for discussing the production of ESI. Each liaison will be, or will have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, and production of ESI

in this matter. The Parties will rely on the liaisons, as needed, to meet and confer about ESI and to help resolve disputes without court intervention. The Parties agree to meet and confer in good faith regarding any dispute concerning the subject matter of this Order. If the Parties are unable to resolve their dispute, they will present it to the Court for adjudication in a manner consistent with the Local Rules. No Party may seek relief from the Court concerning compliance with this Order unless it has orally conferred (or made a reasonable, good faith effort to orally confer) with the other affected Parties.

    Plaintiffs' Discovery Liaison:    Joshua L. Seifert
                                                               Seifert PLLC
                                                                Phone: 646-470-2647
                                                                Email: jseifert@seifertpllc.com

    Defendants' Discovery Liaison:    Benjamin Stoll
                                                             Williams & Connolly LLP
                                                              Phone: 202-434-5756
                                                             Email: bstoll@wc.com

13. <u>Protective Order</u>. All productions are subject to the Stipulation and Protective and Order for the Protection and Exchange of Confidential Information in this matter, dated June 19, 2018 ("Protective Order"). ECF Doc. No. 40. Nothing in this Order shall be deemed to modify or affect the Protective Order. In the event of a conflict between this Order and the Protective Order, the Protective Order shall govern.

14. <u>Non-Waiver</u>. Nothing in this Order shall be construed as a waiver of any Party's rights under the Federal Rules of Civil Procedure and other applicable laws, rules, and orders of the Court, including, but not limited to, the right to propound and object to discovery requests and the right to object to the production, discoverability, admissibility, authenticity, or confidentiality of any Documents. Nothing in this Order shall affect, in any way, the Parties' rights to seek reimbursement of costs associated with the collection, review, and/or production of Documents.

15. <u>Compliance and Deviations</u>. The Parties agree to make good faith efforts to comply with the requirements and specification of this Order. If a Producing Party, notwithstanding such efforts, cannot comply with any material aspect of this Order, or if compliance with a material aspect of this Order would be unreasonable or disproportionate, then within a reasonable time after

4

1  discovery of the inability or infeasibility of compliance, such Producing Party shall inform the
2  Receiving Party in writing as to why compliance with this Order is impossible, unreasonable, or
3  disproportionate. Notwithstanding this Order, the Parties may separately agree to deviate from the
4  protocols and specifications set forth herein as to specific Documents or categories of Documents,
5  without leave of the Court, provided that such agreement is memorialized in writing.

6      16.    <u>Modification</u>. The requirements of this Order may be modified by agreement of
7  the Parties or upon further order of the Court for good cause shown.

8      17.    <u>Third-Party Productions</u>. A Party that issues a non-party subpoena shall include a
9  copy of this Order and the Protective Order in this case with the subpoena and request that the non-
10 party produce Documents in accordance with the specifications set forth therein. The Party issuing
11 the subpoena is responsible for producing to all other Parties any Documents obtained as a result
12 of the subpoena within a reasonable amount of time.

13 **III.    COLLECTION AND REVIEW**

14     18.    <u>Custodians</u>. Each Party will collect ESI by identifying a reasonable number of cus-
15 todians and then asking each custodian to identify locations where potentially relevant ESI may
16 be located.

17     19.    <u>Deduplication</u>. Each Party is only required to produce a single copy of each
18 responsive Document and so may employ industry-standard deduplication, either within custodian
19 or across all custodians or sources (*e.g.*, "global deduplication").Deduplication must take place at
20 the "family" level, meaning that two emails may not be deduplicated if they have different attach-
21 ments even if the content of the emails themselves are identical, and that two email attachments
22 may not be deduplicated if they are attached to different emails even if the content of the attach-
23 ments themselves are identical.If a Party exercises its option to globally de-duplicate, that Party
24 must identify each custodian or source where the Document was located in the "custodian"
25 Metadata field. Hard Copy Documents may not be eliminated as duplicates of responsive ESI.A
26 Party may only de-duplicate "exact duplicate" Documents and may not de-duplicate "near
27
28     5

1  duplicate" Documents, both of the quoted terms in this sentence being given their ordinary
2  meaning in the electronic discovery field.

3  20.  Search Terms. Once each Party has collected its ESI and run any applicable dedu-
4  plication, it will run search terms on that ESI to generate the Documents that will be individually
5  revised for responsiveness. The Parties agree that they will use search terms that are narrowly
6  tailored to identify relevant and discoverable information and that they will select search terms
7  that collectively generate a reasonable number of Documents proportionate to the needs of the
8  case. The Parties agree that it would be unreasonable and disproportionate to the needs of the case
9  for either side to individually review more than 100,000 Documents.

10  21.  Predictive Coding. Nothing in this Order shall preclude any Party from employing
11  analytics, including predictive coding, during the course of its review of Documents. However, for
12  the avoidance of doubt, absent mutual agreement or court order, all post-search-term responsive-
13  ness determinations shall be made by an attorney.

14  **IV.  PRODUCTION FORMAT**

15  22.  General Form of Production. Except as provided in Paragraphs 27–30, all ESI and
16  Hard Copy Documents shall be produced as single-page, black and white, Group IV TIFF image
17  files with the associated text and Metadata specified in this Section II. For each Document, an
18  extracted text file should be provided along with its corresponding TIFF image file(s) and
19  Metadata. Each production should include separate "DATA," "IMAGES," "NativeFiles," and
20  "TEXT" folders.

21  23.  Image Requirements. TIFF image files shall be of at least 300 dpi resolution. The
22  page orientation (*i.e.*, portrait or landscape) of a TIFF image file shall be the same as the underlying
23  Document from which the TIFF image is created. The page size of a TIFF image file shall be 8.5
24  x 11 inches unless, in the reasonable judgment of the Producing Party, a particular Document
25  requires a different page size.

26  24.  Bates Numbers. Each TIFF image shall be branded with a Bates number that must:
27  (1) be unique across the entire production; (2) maintain a constant length of nine numeric digits

28                                                    6

1  (including 0-padding) across the entire production; (3) be sequential within a given Document; and (4) include a three-letter prefix identifying the Producing Party followed by a single-dash. Each TIFF image file shall be named with the same page-level bates number branded on the underlying image. If a Bates number or set of Bates numbers are skipped in a production, the Producing Party will so note in a cover letter accompanying the production.

25. <u>Text Requirements</u>. All ESI and Hard Copy Documents shall be produced with a corresponding multipage text file (*i.e.*, one text file per ESI or Hard Copy Document as opposed to one text file per page). The text file for an ESI Document shall be created by extracting text directly from the underlying native file, unless the ESI Document must be redacted prior to production, in which case the text file shall be generated by applying industry standard OCR technology to the redacted version of the ESI document. The text file for Hard Copy Documents shall also be created using industry standard OCR technology. Each text file shall be named with the beginning Bates number of the ESI or Hard Copy Document to which the text file relates.

26. <u>Metadata Requirements</u>. ESI shall be produced with the Metadata specified in Exhibit A to this Order to the extent such Metadata exists in the original ESI. The Parties are not obligated to create or manually code Metadata fields that are not automatically generated by the processing of the ESI or that do not exist as part of the original Metadata of the ESI, except that all produced ESI must contain, at a minimum, the following Metadata:

    a. BegBates
    b. EndBates
    c. BegFamily
    d. EndFamily
    f. Custodians

The Producing Party is not required to provide any Metadata or specified information in Exhibit A to this Order that contains privileged information.

27. <u>When Native Production Required</u>. The following types of ESI shall be produced in native format only, whether they exist as attachments to emails, embedded files, or standalone

7

1 files: (1) Microsoft Access files and other database; and (2) audio or video files such as .wav or .mpeg files.

2    28. <u>When Native Production May Be Requested</u>. A Party may request that ESI originally produced as TIFF(s) be additionally produced in native format. A Producing Party shall honor such a request where the TIFF version of the ESI omits substantive content included in the native file or where the TIFF version suffers adverse formatting changes as a result of the conversion to TIFF, such as the loss of meaningful color distinctions.

    29. <u>Redacting Native Files</u>. If redactions of Native Files are necessary, the redacted file may be produced in TIFF in accordance with Paragraphs 21–24, provided that the redacted files are TIFFed in a manner that will yield production of all non-privileged content, including, but not limited to, speaker's notes, hidden rows and columns, and comments. If the Parties encounter native files containing privileged content that are not easily converted to TIFF images, the Parties shall meet and confer to determine a suitable manner of production.

    30. <u>Production Specifications for Native Files</u>. When producing ESI in native format, the Producing Party shall:

    a. Provide a corresponding single-page TIFF placeholder stating "Document Produced in Native." The placeholder shall be branded with a Bates number meeting the requirements of Paragraph 23.

    b. Name the native file with the Bates number affixed to the corresponding TIFF placeholder.

    c. Provide the text and Metadata, including the original file name of the underlying ESI, required under Paragraphs 24 and 25.

    31. <u>Load Files</u>. All productions of ESI and Hard Copy Documents shall be accompanied with metadata load files and image load files using standard delimiters. The metadata load file must include a header row with unique field names. Each Producing Party shall provide data and image load files in a format that reasonably allows the Receiving Party to load productions to its document review or case management database.

1     32.    **Family Relationships of ESI**. Parent-child relationships between produced ESI (*e.g.*, the association between an attachment and the e-mail to which it is attached, or a spreadsheet embedded within a Word document) must be preserved by assigning sequential Bates numbers to all produced files within a parent-child group, and by providing accurate attachment ranges for those files in the Metadata fields, as required by Exhibit A.

     33.    **Scanning and Unitization of Hard Copy Documents**. The Parties agree to use reasonable efforts to ensure that Hard Copy Documents are logically unitized such that: (1) multiple, distinct Documents are not merged into a single Document; and (2) distinct Documents are not split into multiple Document ranges. The Parties agree to use reasonable efforts to maintain the family relationships of Hard Copy Documents by scanning and Bates numbering those Documents in sequential order. This provision does not obligate any Party to produce Documents in a manner other than in which those Documents were kept in the ordinary course of business.

     34.    **Enterprise Level Databases and Unusual Data Types**. This Order does not govern the production of ESI maintained in enterprise level databases or other unusual or unique formats or structures. The Parties shall meet and confer, as necessary, regarding the production format of such ESI.

     35.    **Password Protected ESI**. The Producing Party will take reasonable steps, prior to production, to unencrypt and/or restore any discoverable ESI that is encrypted or otherwise password protected. This includes attempting to obtain the password from the custodian of the ESI. Relevant, non-privileged Documents that can be reasonably unencrypted or restored will be produced.

     36.    **Preservation of Metadata**. The Parties shall use industry standard technology and processes to ensure the Metadata required to be produced for ESI is preserved during the collection, processing, and production of those Documents. However, the Parties also acknowledge that in some circumstances it may be more efficient to collect ESI informally, such as by making a simple electronic copy of a file discovered during the course of a witness interview. If the original Metadata of these files becomes of material importance during the course of the litigation, the

9

1 Parties shall meet and confer regarding how to address that issue and will promptly raise any
2 disputes that cannot be resolved with the Court. Nothing in this Order is intended to permit a Party
3 to convert a file that is ordinarily maintained as ESI to a Hard Copy Document for production in
4 this litigation.

5     37. <u>Error Files</u>. If responsive ESI cannot be converted to TIFF without error due to
6 corruption or some other issue, such ESI shall be produced in native form under the requirements
7 of Paragraph 29. If redactions of such files are necessary, however, the Parties shall meet and
8 confer to determine a suitable manner of producing the non-privileged content contained in these
9 files.

10     38. <u>Container Files</u>. The Parties need not produce container files (*e.g.*, .zip) so long as
11 the responsive contents of those files are produced in accordance with the specifications of this
12 Order.

13 **V.   METHOD OF PRODUCTION**

14     39. <u>Branding</u>. All Bates Numbers, confidentiality designations, and redactions shall be
15 burned into the TIFF image files so that they appear when the Document is printed.

16     40. <u>Production Media</u>. Each Party shall produce its ESI and/or Hard Copy Documents
17 on electronic storage media such as CDs, DVDs, or USB hard drives, or via FTP or sharefile. Each
18 piece of electronic storage media shall be assigned a sequential volume number that identifies the
19 Producing Party and, if applicable, the non-party who originally produced the ESI and Hard Copy
20 Documents.

21     41. <u>Cover Letter</u>. Each Party shall accompany each production of ESI and/or Hard
22 Copy Documents with a cover letter specifying: (1) the volume or volumes comprising the
23 production; and (2) the Bates range or ranges of the materials being provided on each volume and
24 whether those bates ranges contain any known gaps.

25     42. <u>Encryption</u>. All productions will be made on encrypted media. The Producing
26 Party shall transmit the encryption key or password to the Receiving Party via email contempora-
27 neously with sending the encrypted production.

28     10

## IV. CONFIDENTIALITY AND PRIVILEGE

43. <u>Confidentiality</u>. The Parties may brand the ESI they produce "confidential" in accordance with the Protective Order. A Party may designate an entire category of Documents "confidential" without individually reviewing each Document in the category for confidentiality if the Party has a good faith basis for believing that any Document within the category is likely to be confidential, as defined in the Protective Order.

44. <u>Privilege Logs</u>. All responsive Documents that a Producing Party withheld from disclosure based on a claim of any privilege, protection, or immunity must be listed in a privilege log on a document-by-document basis (not by category). The privilege log must be provided to the Receiving Party in a format that is text-searchable and that allows the Receiving Party to sort the entries chronologically and by Bates number (e.g., Excel). Communications with outside counsel of record in this matter need not be logged.

1	45.	<u>Clawback</u>. The inadvertent or unintentional production of ESI or Hard Copy Documents containing information that is subject to a claim of attorney-client privilege or work-product protection shall not be deemed a waiver of such privilege or protection. Such inadvertently produced ESI or Hard Copy Documents is governed by the Protective Order.

**IT IS SO STIPULATED,** this 21st day of June, 2018.

| | |
|---|---|
| /s/ David C. O'Mara | /s/ E. Leif Reid |
| David C. O'Mara | E. Leif Reid |
| Nevada Bar No. 8599 | Nevada Bar No. 5750 |
| THE O'MARA LAW FIRM, P.C. | LEWIS ROCA ROTHGERBER CHRISTIE LLP |
| 311 E. Liberty St. | One East Liberty Street |
| Reno, NV 89501 | Suite 300 |
| (775) 323-1321 | Reno, NV 89501-2128 |
| david@omaralaw.net | Telephone: (775) 823-2900 |
| JOSHUA L. SEIFERT PLLC | |
| Joshua L. Seifert, Esq. | Paul B. Gaffney (*pro hac vice*) |
| *Pro Hac Vice* | Jessica Bodger Rydstrom (*pro hac vice*) |
| 175 Varick Street | Benjamin M. Stoll (*pro hac vice*) |
| New York, NY 10014 | Amanda J. Cox (*pro hac vice*) |
| (646) 470-2647 | WILLIAMS & CONNOLLY LLP |
| jseifert@seifertpllc.com | 725 Twelfth Street, N.W. |
| | Washington, DC 20005 |
| SLARSKEY LLC | Telephone: (202) 434-5000 |
| David Slarskey, Esq. | |
| *Pro Hac Vice* | *COUNSEL FOR DEFENDANTS* |
| 800 Third Avenue, 18th Floor | |
| New York, NY 10022 | |
| (212) 658-0661 | |
| dslarskey@slarskey.com | |
| | |
| *COUNSEL FOR PLAINTIFFS* | |

**IT IS SO ORDERED.**

Dated: June 22, 2018

_____
UNITED STATES MAGISTRATE JUDGE

12

**EXHIBIT A**

All produced ESI and Hard Copy Documents must contain the following Metadata fields:

1. BegBates
2. EndBates
3. BegFamily
4. EndFamily
5. Custodians

To the extent the original ESI contains the following Metadata fields or the Metadata is created automatically during ESI processing, ESI must be produced with the following additional Metadata fields:

6. FileName
7. NativeLink
8. TextLink
9. FileSize
10. FileAuthor
11. CreatedDate
12. CreatedTime
13. LastModifiedDate
14. LastModifiedTime
15. MD5Hash
16. FileTitle
17. FileExtension
18. FileType
19. Confidentiality
20. Redacted

To the extent the original ESI is an email document that contains the following Metadata fields or the Metadata is created automatically during ESI processing, the email ESI must be produced with the following additional Metadata fields:

21. From
22. To
23. CC
24. BCC
25. Subject
26. SentDate
27. SentTime
28. ReceivedDate
29. ReceivedTime
30. Messages ID
31. Attachment ID
32. Conversation ID

Date and time fields in the Metadata load file must be formatted as follows:

Date: mm/dd/yyyy

Time: hh:mm:ss (in military time)

14