UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| ADDISON HEMPEL, CASSIDY HEMPEL, CHRISTINE HEMPEL, HUGH HEMPEL, and SOLUTION THERAPEUTICS,<br><br>Plaintiffs,<br><br>v.<br><br>CYDAN DEVELOPMENT, INC., CYDAN II, INC., VTESSE, INC., and SUCAMPO PHARMACEUTICALS, INC.,<br><br>Defendants. | Case No. 3:18-cv-00008-MMD-CBC<br><br>ORDER |

## I. SUMMARY

The more things change, the more they stay the same. The Court's minimum contacts inquiry in this case sounding in contract and tort, assessing relationships between the parties and the State of Nevada that developed largely through contacts via the internet, is a prime example of that refrain. Out-of-state Defendants Cydan Development, Inc., Cydan II, Inc., Vtesse. Inc., and Sucampo Pharmaceuticals, Inc. (collectively, "Defendants") move to have the case dismissed for (1) lack of personal jurisdiction and (2) failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (ECF Nos. 11, 12.)[1] Because the Court's minimum contacts inquiry must focus on the Defendants' relationships with the state, and the Court finds such relationships to be tenuous and thus

///

---

[1] In addition to Defendants' motion to dismiss for lack of personal jurisdiction (ECF No. 11), the Court has considered Plaintiffs' opposition (ECF No. 29) and Defendants' reply (ECF No. 33).

fall short of the connection needed to haul Defendants into this forum, the Court will dismiss the case for lack of personal jurisdiction over Defendants. The Court therefore does not address Defendants' 12(b)(6) motion (ECF No. 12), the opposition to that motion (ECF No. 28), or the reply (ECF No. 32).

## II. RELVANT BACKGROUND

The following facts are taken from the Complaint (ECF No. 1).

### A. The Parties

Plaintiffs Addison Hempel, Cassidy Hempel, Christine Hempel, and Hugh Hempel (collectively, "the Hempels") are Nevada residents. Addison and Cassidy are Christine and Hugh's ("Mr. and Mrs. Hempel") daughters. Solution Therapeutics is an entity wholly owned by the Hempels and headquartered in Reno, Nevada.[2]

All Defendants are Delaware corporations, and none is alleged to have an office or place of business located in Nevada or to have engaged in business with any person(s) or entity in Nevada aside from Plaintiffs. Defendant Cydan Development, Inc. ("Cydan") has its principal place of business in Cambridge, Massachusetts. Defendant Cydan II, Inc. ("Cydan II") also has its principal place of business in Cambridge, Massachusetts. Vtesse, which is wholly owned by Sucampo Pharmaceuticals, Inc. ("Sucampo"), has its principal place of business in Maryland. Sucampo's principal place of business is likewise in Maryland.

### B. Underlying Facts and the Parties' Dispute

Mr. and Mrs. Hempel developed proprietary information, which they characterize as "trade secrets" during the course of caring for their daughters who were diagnosed in 2007 with Niemann-Pick disease, Type C ("NPC"). The proprietary information includes medical research, clinical data and business plans concerning the use of the chemical compound 2-hyrdoxypropyl-$\beta$-cyclodextrin ("cyclodextrin") to treat NPC. Specifically, the information Mr. and Mrs. Hempel obtained and/or developed includes: the protocols for

///

---

[2]Solution Therapeutics and the Hempels are collectively referred to as Plaintiffs.

administering cyclodextrin through multiple routes of administration; the data they collected regarding the effects of treatment and potential indications for cyclodextrin to treat other diagnoses; patient data; relationships with researchers; technology and intellectual property dealing with the formulations of administered cyclodextrin, study design elements, and other high proprietary data developed with Johnson & Johnson and its subsidiary Janssen Pharmaceuticals; and a detailed business plan to commercialized the Hempels' research and development.

As noted, the Complaint seeks relief under contract and tort theories. Plaintiffs assert eight claims for relief.

The first and second claims are for breach of contract and breach of fiduciary duty. (*Id.* at 18, 19.) Plaintiffs assert these claims only against Cydan. Plaintiffs claim Cydan breached the Agreement For Mutual Exchange of Confidential Information ("the Confidentiality Agreement" or "the Agreement") Cydan entered into with the Plaintiffs, and violated fiduciary duties when it allegedly used the Hempels' confidential information for its own profits to the Hempels' detriment and without their permission.

The third, fourth and fifth claims are unjust enrichment, tortious interference with contractual rights, and conversion against Vtesse and Sucampo. (*Id.* at 20–22.) These claims stem from Plaintiffs allegations that Vtesse interfered with Plaintiffs' relationship with Cydan. Plaintiffs further allege that Vtesse was incorporated as Cydan's affiliate by a business model and focused on research that Vtesse, through Cydan or directly through researchers who had access to the Hempels' research, misappropriated from Plaintiffs. (*Id.* at 12–13.)

Plaintiffs assert the three remaining claims against all Defendants. (*Id.* at 22–24.) The sixth claim is brought under NRS § 600A.010 *et seq.* for Defendants' alleged misappropriation and exploitation of Plaintiffs' claimed trade secret information. The seventh claim involves the same allegations as the sixth, but is brought under 18 U.S.C. § 1836. The eighth claim is for civil conspiracy whereby Plaintiffs allege that Defendants conspired to deprive the Hempels of the value of their efforts by misappropriating

confidential information and trade secrets for Defendants' profit and benefit. It appears Cydan II is included in the case merely by being "an affiliate or successor of [Cydan.]" (*Id.* at ¶ 6.)

**III. LEGAL STANDARD**

In opposing a defendant's motion to dismiss for lack of personal jurisdiction, a plaintiff bears the burden of establishing that jurisdiction is proper. *Boschetto v. Hansin*, 539 F.3d 1011, 1015 (9th Cir. 2008). Where a defendant's motion to dismiss is based on written materials rather than an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Brayton Purcell LLP v. Recordon & Recordon,* 606 F.3d 1124, 1127 (9th Cir. 2010) (internal quotation marks omitted). The plaintiff cannot "simply rest on the bare allegations of its complaint," but uncontroverted allegations in the complaint must be taken as true. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (*quoting Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977)). The court "may not assume the truth of allegations in a pleading which are contradicted by affidavit," *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977), but it may resolve factual disputes in the plaintiff's favor, *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).

**IV. DISCUSSION**

"Personal jurisdiction must exist for each claim asserted against a defendant." *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1190 (9th Cir. 2004). A two-part analysis governs whether a court retains personal jurisdiction over a nonresident defendant. "First, the exercise of jurisdiction must satisfy the requirements of the applicable state long-arm statute." *Chan v. Soc'y Expeditions*, 39 F.3d 1398, 1404 (9th Cir. 1994). Since "Nevada's long-arm statute, NRS § 14.065, reaches the limits of due process set by the United States Constitution," the Court moves on to the second part of the analysis. *See Baker v. Eighth Judicial Dist. Ct. ex rel. Cty. of Clark*, 999 P.2d 1020, 1023 (Nev. 2000). "Second, the exercise of jurisdiction must comport with federal due

process." *Chan*, 39 F.3d at 1404–05. "Due process requires that nonresident defendants have certain minimum contacts with the forum state so that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Id.* (*citing Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945)). Courts analyze this constitutional question with reference to two forms of jurisdiction: general and specific jurisdiction.

Here, Plaintiffs rely only on specific jurisdiction. (ECF No. 29 at 14.). In examining whether specific jurisdiction exists, the minimum contacts inquiry is "defendant-focused"— the relationship to be examined is that between the defendant and the forum state, and that relationship must arise out of the defendant's own contacts "with the forum state itself, not . . . with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 284-85 (2014). Specifically, a court may exercise specific jurisdiction over a defendant only where "the defendant's *suit-related conduct*" "create a substantial connection with the forum [s]tate." *Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1022–23 (9th Cir. 2017) (quoting *Walden*, 571 U.S. at 284–85) (emphasis added). To be clear, a plaintiff's contacts with the defendant and the forum state cannot drive the jurisdictional analysis, even though "a defendant's contacts with the forum [s]tate may be intertwined with [its] transactions or interactions with the plaintiff or other parties." *Walden*, 571 U.S. at 286, 289. Further, courts cannot rely on the "unilateral activity" of a plaintiff to find specific jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)

Incorporating these overarching considerations, the Ninth Circuit provides a three-prong test for analyzing an assertion of specific jurisdiction: "(1) The non-resident defendant must *purposefully direct* his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he *purposefully avails* himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011) (quoting *Schwarzenegger*, 374

F.3d at 802) (emphasis added)). "Purposeful availment" and "purposeful direction" call for distinct analyses. A court considers whether there is purposeful direction for suits sounding in tort. *See Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006). The purposeful availment inquiry is for suits sounding in contract. *Id.*

Pertinent to the Court's specific jurisdiction inquiry, Plaintiffs generally assert that the District of Nevada is the proper forum for hearing this case because "substantial part of the events or omissions giving rise to the claim occurred in the [d]istrict and the Hempels reside, or are headquartered in this district, and "the situs of the confidential material misappropriated by Defendants is with the Hempels, who are domiciled in this [d]istrict." (ECF No. 1 at § 21; *see also generally* ECF No. 29.) The Court finds contrary to Plaintiffs' position because Defendants' *challenged conduct* had nothing to do with its own contacts with the State of Nevada itself—the challenged conduct centers on Plaintiffs' unilateral activity and activities outside of this state.

### C. Specific Jurisdiction as to Cydan and Cydan II

The Court will first examine the issue of specific jurisdiction over Cydan.

#### 1. Contract Claim for Relief/Purposeful Availment

Plaintiffs bring a single contract-based claim against Cydan, alleging it breached the Confidentiality Agreement. As noted, for claims sounding in contract, the first prong for establishing specific jurisdiction concerns whether defendant has purposefully availed itself of the privilege of conducting activities in the forum. *Burger King*, 471 U.S. at 476. A defendant so avails itself where the defendant deliberately engages in "significant activities within a [s]tate" or creates "continuing obligations between himself and residents of the forum. *Id.* at 475–76. Relevantly, in *Burger King*, the defendant "entered into a carefully structures 20-year relationship that envisioned continuing and wide-reaching contacts with the [plaintiff in the forum state]." *Id.* at 480.

Plaintiffs contend that Cydan purposefully availed itself of doing business in Nevada by: intentionally initiating and soliciting a business relationship with the Hempels for the purposes of investing in an asset developed "in Nevada by Nevada residents;" by reaching

out to Mr. Hempel who was located "in Nevada" and enticing him to visit Cydan "from Nevada," "knowing the effects of its efforts would be felt in Nevada (and only Nevada);" by the Hempels presenting Cydan with "the Business Plan, which established an implied contract relation to Solution Therapeutics, the proposed Nevada Corp;" and by materializing their "ongoing" confidential relationship with the Confidentiality Agreement, which was "governed by Nevada law." (ECF No. 29 at 21.)

It does not appear that Plaintiffs allege that Cydan took any action in Nevada or have any physical ties to Nevada. Cydan has no office or real property, no employees, no agents in Nevada, nor has anyone from Cydan traveled to Nevada to meet the Hempels. (ECF No. 11-1 at ¶¶ 6, 7 (Adams Decl.).) But, most important for the purposeful availment inquiry is that the alleged contractual document—the Confidentiality Agreement—does not appear to have been entered in Nevada, nor is there any indication that the Agreement contemplated a "substantial connection" between Cydan and Nevada itself. *Walden*, 571 U.S. at 284 ("For a [s]tate to exercise jurisdiction consistent with due process, the defendant' suit-related conduct must create a substantial connection with the forum [s]tate[,]" based on contact the defendant itself creates); *see also Burger King*, 471 U.S. at 478–79 (indicating that a contract between a plaintiff and an out-of-state- defendant is not sufficient in and of itself to establish specific jurisdiction over the defendant in the forum state); *id.* at 479 (providing that what "must be evaluated in determining whether the defendant purposefully established minimum contacts with the forum" are "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing"); *Andes Indus. Inc. v. Cheng Sun Lan*, No. 2:14-cv-00400, 2015 WL 1397727, at *3–4 (D. Nev. Mar. 25, 2015) (finding no personal jurisdiction where contract negotiation, terms, and performance did not involve Nevada).

Here, it appears that before signing the Confidentiality Agreement Mr. Hempel had a single "in person meeting" with Cydan at Cydan's office in Cambridge Massachusetts. (ECF No. 1 at ¶¶ 8, 49; ECF No. 11-1 at ¶ 7 (Adams Decl.).) Besides this meeting, Plaintiffs indicate that Cydan initiated contact with Mr. Hempel (or solicited a business relationship

with the Hempels) through LinkedIn. (ECF No. 1 at ¶ 43.) Plaintiffs allege they otherwise communicated with Cydan through emails ((ECF No. 1 at ¶¶ 45–48, 50–51, 65.) The Confidentiality Agreement itself is signed by electronic signature, dated the same day Mr. Hempel met with Cydan in Massachusetts (ECF No. 1 at ¶¶ 8, 49; ECF No. 11-1 at ¶ 7 (Adams Decl.); *id.* at 9) and the Complaint appears to confirm that the Agreement was returned fully executed by Cydan via email. (ECF No. 1 at ¶ 56.) Cydan and Plaintiffs had other contact by phone (*Id.* at ¶ 66.)

Further, the only mention of Nevada in the Confidentiality Agreement is the agreement's choice-of-law provision stating that the Confidentiality Agreement was to "be construed and interpreted under and in accordance with" Nevada law. *But see, e.g.*, *Burger King*, 471 U.S. at (noting that a choice-of-law provision standing alone cannot confer jurisdiction). The Agreement otherwise provides that it was entered into based on the parties' "desire to enter into discussions . . . in order to determine the feasibility of entering into a business relationship between the parties (the 'State Purpose')." Thus, the Agreement itself indicates that the Agreement bounded the parties to a mere potential of a business relationship. As such, it created a frail relationship between Cydan and Plaintiffs juxtaposed the "20-year interdependent relationship" established between the parties in *Burger King*. 471 U.S. at 482. Such frailty and lack of an actual business relationship cannot support a conclusion that Cydan was contemplated to have the kind of contacts with Nevada sufficient to support this forum's exercise of jurisdiction over Cydan. Additionally, the Court cannot find, and Plaintiffs provide no basis for it to conclude, that Plaintiffs' presentation of their business plan to Cydan established an implied contract between them. (*See* ECF No. 29 at 21 (appearing to make such argument).)

It is therefore evident that to find purposeful availment in Nevada based on what Plaintiffs allege, as noted above, would be to allow Plaintiffs' contacts with Defendants and Nevada to drive the Court's minimum contact analysis, which *Walden* makes clear is impermissible. *Id.* at 289. The Court concludes that Cydan's suit-related contacts with
///

Nevada is insufficient to support a finding that Cydan has purposefully availed itself of doing business in Nevada.

### 2. Tort Based Claims for Relief/Purposeful Direction

Plaintiffs next allege tort claims against Cydan: for breach of fiduciary duty; and including all Defendants—for violation of the Nevada Trade Secrets Act, NRS § 600A.010, violation of the "Defense of Trade Secrets Act, 18 U.S.C. § 1836, and civil conspiracy.

Here, the inquiry is "whether a defendant purposefully directs his activities at the forum state, applying an *effects* test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *Id.* (internal quotations, bracket, and citations omitted) (emphasis added). The "effects test" imposes three requirements: "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant [knew was] likely to be suffered in the forum state." *Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007) (quoting *Yahoo! Inc.*, 433 F.3d at 1206). But, even in the tort context, it is "insufficient to rely on a defendant's "random, fortuitous, or attenuated contacts or on the unilateral activity of [the] plaintiff[s]." *Walden*, 571 U.S. at 286 (citing *Burger King*, 471 U.S. at 475). The court must still "consider the extent of the defendant's contacts with the forum and the degree to which plaintiff's suit is related to those contacts." *Menken*, 503 F.3d at 1058; *see also Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015) ("Thus, a mere injury to a forum resident is not a sufficient connection to the forum. Rather, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum [s]tate.") (internal quotations and citations omitted). Where the cause of action *arises out of* a defendant's purposeful contact with the forum state, a single forum state contact can support specific jurisdiction. *Id.*

Plaintiffs' tort claims suffer from the same jurisdictional defects as their contract claim, as asserted against Cydan, because again there is insufficient suit-related contacts with Nevada to support a finding of purposeful direction. First, to support their claim of purposeful direction, Plaintiffs essentially cite to the same actions previously discussed.

9

(ECF No. 29.) However in the tort context they particularly focus on Cydan's LinkedIn solicitation or contact initiation with Mr. Hempel, premised on forming a joint venture. (Id. at 15–18.) Plaintiffs argue that this is a basis for finding purposeful direction aimed at Nevada because Plaintiffs are Nevada residents who compiled and maintain their protected information in Nevada which Cydan requested and obtained access. (*Id.* at 16.)

As an initial matter, Cydan's solicitation or initial contact via LinkedIn does not appear to itself be the challenged conduct, and the Confidentiality Agreement that ultimately resulted from such contact—given the joint venture did not materialize—was not executed in Nevada. *See Picot*, 780 F.3d at 1214 (finding no specific personal jurisdiction where plaintiff alleged the tort of interference with a contract, albeit the contract was executed in California, because "none of [the defendant's] challenged conduct had anything to do with [California] itself"); *see also Overholt v. Airista Flow Inc.*, No. 17-cv-1337, 2018 WL 355231, at * 13 (S.D. Cal. Jan. 10, 2018) (citing *Walden*, 571 U.S. at 290) ("[I]n light of *Walden* and *Picot*, the express aiming prong is not met where a defendant merely targets a [forum] resident.")

Under *Walden*, "[t]he proper question . . . is whether the defendant's conduct connects [it] to the forum in a *meaningful way*." *Walden*, 571 U.S. at 290 (emphasis added). Here, the three tort claims alleged against Cydan—beyond the fiduciary duty claim pertaining to the contract itself—implicate the intentional conduct of misappropriation of "trade secrets" or proprietary information (including the alleged conspiracy to do so). (ECF No. 1 at 22–24; ECF No. 29 at 18.) But, neither the Complaint nor Plaintiffs' opposition allege that any misappropriation occurred in Nevada. In fact, both the Complaint and the opposition is silent as to where such misappropriation took place. Plaintiffs however suggest that the Court should focus on the fact that Plaintiffs had compiled and maintained the information in Nevada, but the Complaint indicates that Plaintiffs shared much of this information with Cydan via the internet. (ECF No. 1 at ¶¶ 50, 51.) Moreover, to focus on assertions that Plaintiffs compiled, maintained, and shared the alleged misappropriated information with Cydan is surely not a defendant-focused examination and would again

allow Plaintiffs' unilateral activity to drive the minimum contacts inquiry. The Court concludes it lacks sufficient basis upon which to find that Cydan purposefully directed meaningful contacts at Nevada based on the challenged conduct.

In sum, the Court concludes it lacks jurisdiction over Cydan. Accordingly Cydan is dismissed from this action. Cydan II is likewise dismissed because, as the Court noted, Cydan II appears to be joined as a defendant in this case merely by being "an affiliate or successor of [Cydan.]" (ECF No. 1 at ¶ 6; *see also* ECF No. 29 at 23 ("Cydan II . . . should also be deemed subject to the Court's jurisdiction under principles of successor liability, agency, and alter ego status.").)

### D. Specific Jurisdiction as to Vtesse and Sucampo

#### 1. Purposeful Availment

Plaintiffs appear to argue that the Court should find purposeful availment subjecting Vtesse, and Sucampo as Vtesse's successor in interest, alter ego or agent, to this Court's exercise of jurisdiction over them "for the same reasons" as with Cydan. (ECF No. 29 at 21–26.) Plaintiffs' position is that "Vtesse ratified Cydan's Confidentiality Agreement and implied contract regarding the Business Plan by accepting the benefits[,] and therefore "assumed Cydan's jurisdictional contacts." (*Id.* at 21.) Thus, because the Court found *supra* that Cydan did not create sufficient suit-related contact with Nevada to find it had purposefully availed itself of doing business in Nevada, the Court extends that conclusion to Vtesse, and to Sucampo.

#### 2. Purposeful Direction

In addition to the misappropriation conduct alleged in the three tort claims against all Defendants and which the Court concludes is insufficient for a finding of purposeful direction, Plaintiffs otherwise allege unjust enrichment, tortious interference with contractual rights, and conversion against Vtesse and Sucampo. (ECF No. 1 at 20–22.) But these claims are grounded in the use of, or benefits from, the alleged misappropriated

///

///

information, or interference (with an agreement not executed in Nevada) that is not alleged to have occurred in Nevada. (*Id.*)

The Court acknowledges that, unlike with Cydan, Plaintiffs contend that Vtesse made physical contact with Nevada by visiting the "Hempels in their home [in Nevada] to lull the Hempels into complacency." (ECF No. 29 at 18.) But, while Vtesse's momentary presence in Nevada is relevant, it is insufficient to support jurisdiction. *See Walden*, 571 U.S. at 285 (noting that physical presence in various forms is "not a prerequisite to jurisdiction," but is "certainly a relevant contact"). More relevant is that Vtesse's visit to the Hempels' home is not challenged conduct nor is it integral to any of Plaintiffs' claims against Vtesse. Therefore, there is nothing to support a finding of purposeful direction by Vtesse, and likewise Sucampo. Consequently, the Court cannot exercise specific jurisdiction over them.

Cumulatively, the Court finds it lacks personal jurisdiction over all Defendants.

### E. Venue Transfer

Defendants argue for the case to be transferred to Maryland as an alternative to dismissal. (ECF Nos. 11, 33.) Although Defendants reference the relevant transfer statute as 28 U.S.C. § 1406 (*see, e.g.*, ECF No. 11 at 13; ECF No. 33 at 14), the proper transfer statute is § 1631 because § 1406(a) "only allows transfer where the first court has subject matter jurisdiction over the action." *Hernandez v. Campbell*, 204 F.3d 861, 865 (9th Cir. 2000).

"Under a provision of the Federal Courts Improvement Act, 28 U.S.C. § 1631, if a court finds that there is a want of jurisdiction the court shall transfer the action to any other such court in which the action could have been brought 'if it is in the interest of justice.'" *Miller v. Hambrick*, 905 F.2d 259, 262 (9th Cir. 1990) (quoting *In re McCauley*, 814 F.2d 1350, 1351–52 (9th Cir. 1987)). Transfer is normally in the interest of justice because dismissal of an action that could have been brought elsewhere is "time-consuming and justice-defeating." *Id.* (internal quotation and citation omitted). "When determining whether transfer is in the interest of justice, courts have considered whether the failure

to transfer would prejudice the litigant, whether the litigant filed the original action in good faith, and other equitable factors." *Cruz–Aguilera v. I.N.S.,* 245 F.3d 1070, 1074 (9th Cir. 2001). All three factors are met here.

First, failure to transfer the case in lieu of dismissal would likely be prejudicial to all parties, but particularly Plaintiffs who maintain the right to seek redress for their alleged injuries. And, there is no indication that any party would be meaningfully prejudiced by having the case transferred from Nevada to the District of Maryland. Defendants do contend that transfer to the District of Maryland is appropriate because Defendants Vtesse and Sucampo are headquartered there. (ECF No. 11 at 13.) But this reason suggests that the District of Massachusetts would also be appropriate because Cydan and Cydan II are headquartered there. The appropriate place of transfer also appears to be a toss-up between Maryland and Massachusetts, to the extent that Plaintiffs' claims are largely grounded in their claims of misappropriation of trade secrets and proprietary information concerning all Defendants. Nonetheless, neither Defendants nor Plaintiffs argue that transfer as between Maryland and Massachusetts would be prejudicial. To be clear, Plaintiffs argue against transfer to Maryland chiefly because Plaintiffs believe the District of Nevada is the most appropriate forum, an argument with which this Court disagrees. (ECF No. 29 at 26–28.)

Second, there is no indication that Plaintiffs acted in bad faith by bringing the case in this district. But this consideration again would only support maintaining the action in Nevada as Plaintiffs desire, or dismissal, and therefore speaks not to transfer in Maryland or Massachusetts.

Third, as to other equitable considerations, the Court finds it would be in the interest of justice to transfer the case to Maryland. There is no indication that venue would be any less proper in Maryland than in Massachusetts where some Defendants are headquartered. Further, Defendants collectively agree for the case to transfer to Maryland, and Plaintiffs only oppose to such transfer relative to Nevada. Moreover, Plaintiffs admit that their researchers are located in California and that "discovery is likely to be almost

entirely electronic." (ECF No. 29 at 27.) At the same time, Defendants contend that research information is located in Maryland and that clinical trials were managed there. (ECF No. 11 at 13.)

Accordingly, having found the District of Nevada lacks jurisdiction over Defendants and not finding transfer to Maryland to be improper, the Court will transfer this case to the District of Maryland in the interest of justice.

**V.    CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

It is therefore ordered that Defendants' motion to dismiss for lack of personal jurisdiction (ECF No. 11) is granted.

It is further ordered that this case be transferred to the District of Maryland.

DATED THIS 2nd day of November 2018.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE