IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ADDISON HEMPEL, *et al.*, | * | |
| Plaintiffs, | * | |
| | | Case No. PX-18-3404 |
| v. | * | |
| CYDAN DEVELOPMENT, INC., *et al.,* | * | |
| Defendants. | * | |

\* \* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is the motion to compel ("Motion") (*see* ECF Nos. 114 & 125 at 11-13) filed by Defendants Cydan Development, Inc, *et al.*[1] Having considered the submissions of the parties (ECF Nos. 114, 125, 140 & 145), the Court finds that a hearing is unnecessary. *See* Loc. R. 105.6. For the following reasons, the Motion will be granted in part and denied in part.

**I.    Background**

By letter order dated June 2, 2020, the Court directed the parties to file additional briefing regarding Defendants' argument that Plaintiffs were improperly withholding communications between Plaintiffs and third parties on the basis of the common interest privilege. (ECF No. 139.) Because the matter is now fully briefed, the Court must decide whether the communications withheld by Plaintiffs are discoverable.

Plaintiffs are withholding 79 communications on the basis of the attorney-client privilege, the work product protection, and the common interest privilege. All of the communications at issue in the Motion are between Plaintiffs and third parties. Some of the communications also include

---

[1] This case was referred to me for discovery, specifically ECF No. 114.

Plaintiffs' attorneys.² Plaintiffs contend that the documents they withheld as work product were all created in anticipation of litigation, that their disclosure to non-adversarial third parties does not waive the protection, and that the common interest privilege applies. With regard to the documents withheld on the basis of the attorney-client privilege, Plaintiffs argue that the disclosure of these documents to third parties did not waive the privilege because the common interest privilege applies.

Defendants disagree. They argue that Plaintiffs cannot prove that any of the documents identified as work product were prepared in anticipation of litigation. Defendants note that none of the documents were created at the direction of an attorney, that many of the documents predate the commencement of this lawsuit by more than one year, and that Plaintiffs' description of the documents indicates that they were made in connection with the investigation of facts and not because of anticipated litigation.³ (ECF No. 145 at 6.) Defendants also argue that the common interest privilege does not shield the withheld documents from disclosure because it does not apply to the communications at issue.

## II. Analysis

The Court must decide four issues to resolve Defendants' Motion: (1) whether Plaintiffs are properly withholding protected work product; (2) whether Plaintiffs waived the work product protection when they disclosed the documents to third parties; (3) whether Plaintiffs' work product is nonetheless discoverable because of Defendants' substantial need for it; and (4) whether the

---

² As directed by the Court, Plaintiffs produced to the Court a copy of its privilege log and, *ex parte*, a copy of the withheld documents.

³ The Court is not required to decide whether Plaintiffs properly asserted the attorney-client privilege for the communications at issue in the first place. Even assuming that Plaintiffs properly asserted this privilege, as explained below, it was waived when the communications were disclosed to third parties.

common interest privilege applies to prevent a finding of waiver for any documents disclosed to third parties.

### A. Work Product Doctrine

The work product doctrine is meant to "protect the effectiveness of a lawyer's trial preparations by immunizing such materials from discovery." *Handgards, Inc. v. Johnson & Johnson*, 413 F. Supp. 926, 929 (N.D. Cal. 1976) (citing *Hickman v. Taylor*, 329 U.S. 495, 67 (1947)). The work product doctrine is partially codified in Rule 26(b)(3) of the Federal Rules of Civil Procedure:

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
>
> > (i) they are otherwise discoverable under Rule 26(b)(1); and
> > (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

Fed. R. Civ. P. 26(b)(3).

"For a document to be created 'in anticipation of litigation' it must be prepared *because* of the prospect of litigation when the preparer faces an actual claim following an actual event or series of events that reasonably could result in litigation." *Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Tr. No. 1B*, 230 F.R.D. 398, 418 (D. Md. 2005) (quoting *National Union Fire Ins. Co. v. Murray Sheet Metal Co.*, 967 F.2d 980, 984 (4th Cir. 1992)). The party seeking protection under the work product doctrine has the burden to show that it applies. *Sandberg v. Va. Bankshares, Inc.*, 979 F.2d 332, 355 (4th Cir. 1992).

### 1. Work Product Protection

Plaintiffs contend that 52 documents on its privilege log are protected from disclosure by the work product doctrine. Plaintiffs' argument is as follows:

> Here Plaintiffs have withheld communications with Drs. Hastings and Liu that related to the Hempels' efforts with their attorneys to develop the facts supporting their case and determine their legal theories. *See, e.g.*, Ex. A at HEMPEL000110034 (April 4, 2017 E-Mail from C. Hempel to C. Hastings, *et al.*); HEMPEL000110072-80 (September 8, 2016 E-Mail from C. Hempel to S. Hrynkow, *et al.*). The Hempels involved Dr. Hastings (and Rita Hao, legal counsel for Dr. Hastings) in those efforts because of her knowledge, expertise, and status as a percipient witness. Because these communications related to litigation strategies and fact gathering (and many of which involved the Hempels' prior counsel at Mayer Brown), and because the Hempels understood that their communications with Drs. Hastings and Liu were made in anticipation of litigation and would be maintained in confidence, mere inclusion of Drs. Hastings and Liu in these communications did not waive any protection from disclosure. Hempel. Decl. ¶ 2.

(ECF No. 140 at 6-7.)

To support their argument, Plaintiffs have produced a privilege log (ECF No. 140-2). The privilege log contains the following descriptive categories: "Bates Range, Email Sent Date, Email From, Email To, Email CC, Subject Matter, Attachments, and Reason Withheld." In addition, Plaintiffs have submitted the Declaration of Hugh Hempel ("Mr. Hempel") (ECF No. 140-1). In the Declaration, Mr. Hempel provides the following explanation as to why the documents are protected work product:

> 2.       Upon learning of the misconduct alleged in the Amended Complaint, my wife, Christine Hempel, and I retained Mayer Brown LLP in 2016 as counsel and began an investigation of the underlying facts to determine our legal rights. As part of the investigation and collection of evidence, my wife and I frequently consulted Dr. Hastings in communications we believed, given Dr. Hastings's status as our daughters' long-time treating physician, would be maintained in confidence. We did so because Dr. Hastings was a percipient witness to our efforts to develop a treatment for [Niemann-Pick Disease (Type C) ("NPC")] and because Dr. Hastings collaborated with us, including acting as the treating physician for our daughters, and as the physician sponsor for the submission of our NPC protocols to the Food and Drug Administration. Dr. Hastings was crucial to our effort to develop the facts underlying our claims in this litigation.

4

      3.     Also as part of our investigation and collection of evidence, my wife and I consulted with Dr. Benny Liu for many of the same reasons that we consulted with Dr. Hastings. Dr. Liu is a pioneer is cyclodextrin research, and he assisted my wife and I in understanding the facts underlying our legal rights. Like Dr. Hastings, we believed that our communications with Dr. Liu were in confidence.

(*Id.* at 1-2.)

Finally, Plaintiffs submitted a copy of the withheld documents to the Court for *in camera* review. Although it was not necessary for the Court to conduct such a review to decide the Motion, the Court performed the review anyway.[4] Having reviewed Plaintiffs' written arguments, the privilege log, Mr. Hempel's Declaration, and the withheld documents themselves, the Court

---

[4] Judge Grimm has summarized how parties may properly assert the attorney-client privilege and the work product protection in this Court:

> [I]n written discovery, ensuring that a privilege or protection is asserted properly in the first instance and maintained thereafter involves a several step process. First, pursuant to Fed. R. Civ. P. 26(b)(5), the party asserting privilege/protection must do so with particularity for each document, or category of documents, for which privilege/protection is claimed. At this first stage, it is sufficient to meet the initial burden through a properly-prepared privilege log. If, after this has been done, the requesting party challenges the sufficiency of the assertion of privilege/protection, the asserting party may no longer rest on the privilege log, but bears the burden of establishing an evidentiary basis—by affidavit, deposition transcript, or other evidence—for each element of each privilege/protection claimed for each document or category of document. A failure to do so warrants a ruling that the documents must be produced because of the failure of the asserting party to meet its burden. If it makes this showing, and the requesting party still contests the assertion of privilege/protection, then the dispute is ready to submit to the court, which, after looking at the evidentiary support offered by the asserting party, can rule on the merits of the claim or order that the disputed documents be produced for *in camera* inspection.

*Elat v. Ngoubene*, No. PWG-11-2931, 2013 WL 4478190, at *5 (D. Md. Aug. 16, 2013). The Court is hesitant to conduct *in camera* reviews during discovery disputes because it is a strain on judicial resources. Where, as here, little evidence is presented to the Court to explain why each document is not discoverable, the task becomes more difficult.

concludes that the work product protection does not apply to a majority of the documents. The Court will begin, however, with a discussion of the few documents that are protected work product.

### a. The Timelines are Protected Work Product

The work product protection applies only to the following documents:

HEMPEL000109804-HEMPEL000109827
HEMPEL000109829-HEMPEL000109852
HEMPEL000109890-HEMPEL000109922
HEMPEL000110012-HEMPEL000110031
HEMPEL000110094-HEMPEL000110113

Each of these documents (the "timelines") is some version of a timeline that Mr. Hempel and his wife, Christine Hempel ("Mrs. Hempel"), prepared because of anticipated litigation. Plaintiffs describe the subject matter of these documents in their privilege log as a "factual overview" of certain matters relevant to this litigation.[5] This description is vague but it is consistent with Mr. Hempel's Declaration, which describes Plaintiffs' efforts since 2016 to "develop the facts underlying [the] claims in this litigation." (ECF No. 140-1 at 1-2.)

Plaintiffs have not submitted much else to substantiate their work product claim for these documents. But little context is necessary to understand the relation of the timelines to the litigation in this case. *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co.*, 967 F.2d 980, 985 (4th Cir. 1992) (noting that a court should consider "the documents or their circumstances" to determine whether the work product protection applies). In the Court's experience, it is common for parties to prepare timelines of important facts and dates in order to prepare for litigation. Such timelines serve as an organizing tool for the parties and their counsel,

---

[5] The Court notes that there is a version of the timeline at Bates Nos. HEMPEL000109856-HEMPEL000109888 for which Plaintiffs do not claim the work product protection. Because Plaintiffs did not claim that this document is work product, it may not be withheld from production on this basis.

at least in the early stages of planning for litigation. The timelines here were obviously prepared by Mr. and Mrs. Hempel in anticipation of litigation. As such, they were properly withheld as protected work product.

Defendants argue that several factors suggest that the documents were not prepared in anticipation of litigation: many of the documents were created more than a year before Plaintiffs filed this lawsuit, the descriptions of the documents on the privilege log indicate that the communications relate to investigation of facts rather than preparation for litigation, and "[n]one of the documents were prepared by, for, or at the request of any lawyer." (ECF No. 145 at 6). As to Defendants' first two points (the timing of the documents' creation and Plaintiffs' description of the documents), the Court finds that the content of the timelines and the context in which they were created indicates that they were prepared in anticipation of litigation.

As to Defendants' last point, the involvement of counsel, the Court acknowledges that there is no evidence that the timelines were "prepared by, for, or at the request of [a] lawyer." (*Id.*) If the timelines had been created at the direction of counsel, Plaintiffs' work product claim would be stronger. But the statutory text of Rule 26 does not require that documents be "prepared by, for, or at the request of [a] lawyer" in order to be protected as work product. The facts in *Prowess, Inc. v. Raysearch Labs. AB*, No. WDQ-11-1357, 2013 WL 509021, at *4 (D. Md. Feb. 11, 2013), which Defendants cite on this point, are different than the circumstances here. In *Prowess*, the Court ruled that communications between a party and certain third-party inventors were not protected work product because they did not "occur[] at the direction of the party's attorneys." *Id.* Here, however, the timelines were prepared by Mr. and Mrs. Hempel, who are parties to this case. As such, they may be withheld as work product even without a showing that they were created at the request of a lawyer. *See* Fed. R. Civ. P. 26(b)(3) (stating that documents "prepared in anticipation of litigation

7

or for trial *by or for another party* or its representative" are protected from disclosure) (emphasis added).

### b. The Remaining Documents Are Not Protected

The remaining documents on the privilege log are not protected work product. The Court makes this finding for the following reasons. First, many of the documents that Plaintiffs claim are work product were created by persons other than Plaintiffs and their representatives. Although this fact does not in itself preclude these documents from work product protection, there is no evidence that any of these documents were created at the direction of Plaintiffs or their representatives because of anticipated litigation. *See Prowess*, 2013 WL 509021, at *4; Fed. R. Civ. P 26(b)(3)(A) (limiting the work product protection to documents "prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)"). As such, Plaintiffs have not met their burden to demonstrate that these documents are protected under the work product doctrine.

Second, Plaintiffs have not made an adequate showing that the documents were prepared because of anticipated litigation. *Neuberger*, 230 F.R.D. at 418; *see also Millennium Inorganic Chemicals Ltd. v. Nat'l Union Fire Ins. Co.*, No. ELH-09-1893, 2011 WL 1466428, at *4 (D. Md. Apr. 15, 2011) (explaining that district courts must "determine, from an examination of the documents or their circumstances" whether they were "prepared because of the prospect of litigation" and not for another reason). The documents may all be related to anticipated litigation but Plaintiffs have not produced sufficient evidence to "establish the underlying nexus between the preparation of the document and the specific litigation." *Neuberger*, 230 F.R.D. at 418; *see also United States v. Duke Energy Corp.*, No. 1:00CV1262, 2012 WL 1565228, at *17 (M.D.N.C. Apr. 30, 2012). In meeting its burden to show that documents were prepared in anticipation of

litigation, "a party cannot simply rely on conclusory statements in its memoranda." *Id.* (citing 4 James Wm. Moore, *Moore's Federal Practice* ¶ 26.15[2] (2nd ed. 1996)); *see also Adair v. EQT Prod. Co.*, 285 F.R.D. 376, 382 (W.D. Va. 2012) ("As with the attorney-client privilege, an assertion that a document is protected by the work-product doctrine must be established by specific facts and not conclusory statements."). "The Court will not speculate as to the reasons the documents were created or construct a scenario under which the documents could arguably" be protected. *Id.*; *RLI Ins. Co. v. Conseco, Inc.*, 477 F. Supp. 2d 741, 748 (E.D. Va. March 7, 2007) (explaining that for a proponent to meet its burden to demonstrate that a document is protected work product, the proponent "must 'come forward with a specific demonstration of facts supporting the requested protection,' preferably through affidavits from knowledgeable persons") (quoting *Suggs v. Whitaker*, 152 F.R.D. 501, 505 (M.D.N.C. 1993)). Here, the only evidence that the documents are work product is the two-page Declaration signed by Mr. Hempel and the brief descriptions of the documents on the privilege log. This is simply not enough "specific factual support" for the Court to conclude that the documents are protected work product.

Third, even after conducting an *in camera* review of the documents, the Court is still unable to conclude that they were prepared in anticipation of litigation. Plaintiffs' counsel were not included on many of the emails contained in the documents. This fact is not dispositive but it does indicate that the documents were not prepared in anticipation of litigation. If, as Mr. Hempel states in his Declaration, Plaintiffs retained counsel in 2016 (he does not specify a date), the Court would expect that Plaintiffs' counsel would be included in all of the communications listed on the privilege log or that an explanation would be offered for why they were not included.

In addition, the content of the documents themselves is not sufficient to demonstrate that they were prepared because of anticipated litigation. With the exception of the timelines, it is

unclear what any of the other documents have to do with the litigation that Plaintiffs anticipated at the time that the documents were created. Plaintiffs have not submitted sufficient evidence to put these documents in context. Defendants rightly point out that it is not enough for Plaintiffs to establish that "the communications were *related* to litigation." (ECF No. 145 at 6.) They must show that the communications were made in preparation for anticipated litigation.

Except for the timelines, the Court does not understand how these documents could be said to have been made in preparation for litigation. For a document to have been prepared for anticipated litigation, there must be some nexus between the preparation of the document and the anticipated litigation other than the mere subject matter. Only documents created in service of anticipated litigation can be said to have been "prepared" for litigation under Rule 26(b)(3). This is the only reading of the rule that gives meaning to the work product doctrine's purpose. *See generally RLI Ins.*, 477 F. Supp. 2d at 748 ("[A]ssertions of evidentiary privilege are narrowly and strictly construed . . so that the privilege is "strictly confined within the narrowest possible limits consistent with the logic of its principle.") (quoting *In re Grand Jury Proceedings*, 727 F.2d 1352, 1355 (4th Cir. 1984)). Otherwise, an email from Mr. or Mrs. Hempel to a friend about the litigation and their frustration with Defendants would qualify for the work product protection, even it was not written with any purpose of actually assisting Plaintiffs or their counsel in any anticipated litigation. The Court rejects this notion. Shielding such documents from discovery would be inconsistent with the truth-seeking purposes of discovery. *RLI Ins.*, 477 F. Supp. 2d at 748 ("Courts disfavor assertions of evidentiary privilege because they shield evidence from the truth-seeking process.") (citing *Herbert v. Lando*, 441 U.S. 153, 175 (1979)). And shielding the documents would do nothing to further the purpose of the work product doctrine. *See* Edna Sela Epstein, *The Attorney-Client Privilege and the Work-Product Doctrine* 2.I (5th ed. 2007) ("The protection given

to 'work-product' arises from the assumption that an attorney cannot provide adequate representation unless certain matters are kept beyond the knowledge of adversaries. It also has its source in the notion that each side is responsible for the preparation of its case without undue freeloading or piggy backing on the work done and costs incurred by the its adversary in preparation of the adversary's case.").

The Court recognizes that the work product protection is expansive. The Court conducted its *in camera* review to be certain that it was not missing something that Plaintiffs should have captured in their privilege log and Mr. Hempel's conclusory and non-specific Declaration. After conducting this review and considering all of the evidence and arguments submitted in connection with this issue, the Court finds that Plaintiffs have failed to meet their burden to demonstrate with specific factual support that the documents for which they claim work product protection (besides the timelines) were prepared in anticipation of litigation.

### 2. Waiver of Work Product Protection

Having determined that the timelines are protected work product, the Court must now consider whether Plaintiffs waived that protection by disclosing the timelines to third parties. "[D]isclosure of a document to third persons does not waive the work product immunity unless it has substantially increased the opportunities for potential adversaries to obtain the information." 8 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2024 (3d ed. 2020); *see also Continental Cas. Co. v. Under Armour, Inc.*, 537 F. Supp. 2d 761, 772 (D. Md. 2008) ("Work-product immunity is waived if the client, the client's lawyer, or another authorized agent of the client . . . discloses the material to third persons in circumstances in which there is a significant likelihood that an adversary or potential adversary in anticipated litigation will obtain it.") (citation omitted).

Here, there was no waiver of the work product protection. Plaintiffs' disclosures to third parties did not create a significant likelihood that an adversary or potential adversary would obtain the timelines.[6] Plaintiffs characterize Dr. Hastings as "their agent" and both Dr. Hastings and Dr. Liu as "their collaborators" in the investigation of their claims. (ECF No. 140 at 3-4.) Dr. Hastings "was the physician who treated the Hempels' daughters, she worked with the Hempels closely for years regarding the treatment at issue in this case, and she was one of the pioneers in NPC research related to cyclodextrin." (*Id.*) There is no reason to think that an adversary or potential adversary of the Plaintiffs might obtain the timelines from Dr. Hastings or Dr. Liu. The same is true for the persons at CTD with whom Plaintiffs shared the timelines. Plaintiffs had no cause to fear that anyone at CTD might disclose the timelines to any adversary or potential adversary of Plaintiffs. For these reasons, Plaintiffs have not waived the work product protection for the timelines.

### 3. Substantial Need and Undue Hardship

Finally, the Court must determine whether the timelines should be produced to Defendants because of a substantial need under Rule 26(b)(3)(A)(ii). Because the timelines were prepared by Mr. and Mrs. Hempel, there is no question that the timelines are ordinary work product rather than opinion work product. *In re Doe*, 662 F.2d 1073, 1076 (4th Cir. 1981) ("'Opinion work product' is work product that contains those fruits of the attorney's mental processes."); Fed. R. Civ. P. 26(b)(3)(B) (stating that if a court orders discovery of protected work product, "it must protect

---

[6] Plaintiffs' privilege log includes communications with a number of third parties: Dr. Caroline Hastings (a physician who treated the Mr. and Mrs. Hempel's daughters and worked with the family "closely for years regarding the treatment at issue in this case"); Dr. Benny Liu (another physician who Plaintiffs describe as a collaborator); several employees CTD Holdings, Inc. ("CTD") (communications that Plaintiffs describe as occurring "in the context of [Plaintiffs] and CTD's discussion of jointly filing a Freedom of Information Act complaint against the National Institutes of Health"); Joshua Fine (a family member of an employee of CTD); and other attorneys associated with these third parties. (*See* ECF No. 140 at 3-4.)

against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation"). A party may obtain another party's ordinary work product if it "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii); *see also In re Grand Jury Proceedings, Thursday Special Grand Jury Sept. Term, 1991*, 33 F.3d 342, 348 (4th Cir. 1994); *Nat'l Union Fire Ins. Co.*, 967 F.2d at 985 (explaining that the protection accorded to ordinary work product "may be outweighed by a showing based on the document's relevance and importance to the issues in the litigation and the unavailability of the facts in the documents from other sources").

>Defendants argue that they have a substantial need for Plaintiffs' work product:
>
>Defendants cannot obtain the information in these documents from any other source, and Plaintiffs' communications with a potential witness (Dr. Hastings) and with Vtesse's competitor (CTD) are highly relevant: they may contain candid assessments of Defendants' conduct and of the value and confidentiality of the Hempels' alleged trade secrets. They may also speak to when (if ever) the Hempels stopped seeking to commercialize their alleged trade secrets, whether the Hempels truly believed they were in a "joint venture" with Defendants, and why the Hempels chose to sue Defendants rather than NIH.

(ECF No. 145 at 7-8.)

This is not a sufficient showing for the Court to order Plaintiffs to produce the timelines. The Court is confident that Defendants will be able to prepare their case without the timelines. The timelines were prepared well before Plaintiffs' lawsuit was filed and the information contained in the timelines is likely to be available from other, readily discoverable sources. In addition, the Court presumes that Defendants will depose Plaintiffs and inquire about their recollection of the timeline of events in this case. Finally, many of the documents that Plaintiffs withheld as work product will be disclosed to Defendants pursuant to this Order, further alleviating any need Defendants have for the timelines.

### B. Common Interest Privilege

Plaintiffs withheld 36 documents on the basis of the attorney-client privilege and the common interest privilege.[7] Defendants argue that these documents must be produced because the common interest privilege does not apply. Because the common interest privilege does not apply, Defendants argue, the inclusion of third parties on each of the purportedly privileged communications operates as a waiver of the privilege.

The common interest privilege is an "extension of the attorney-client privilege" that "protects communications between parties who share a common interest in litigation." *Elat v. Ngoubene*, No. PWG-11-2931, 2013 WL 4478190, at *2 (D. Md. Aug. 16, 2013). It is "an exception to the general rule that no attorney-client privilege attaches when confidential communications are communicated in the presence of or to third parties." *Id.* It applies when "two or more parties consult or retain an attorney concerning a legal matter in which they share a common interest." *Id.* (quoting *Hanson v. U.S. Agency for Int'l Dev.*, 372 F.3d 286, 292 (4th Cir. 2004)). The common interest privilege "permits parties whose legal interests coincide to share privileged materials with one another in order to more effectively prosecute or defend their claims." *Hunton & Williams v. U.S. Dep't of Justice*, 590 F.3d 272, 277 (4th Cir. 2010).

The proponent of the common interest privilege has the burden to establish that it applies. *In re Sanctuary Belize Litig.*, No. PJM-18-3309, 2019 WL 6717771, at *2 (D. Md. Dec. 10, 2019) (citing *Sheet Metal Workers Int'l Ass'n v. Sweeney*, 29 F.3d 120, 125 (4th Cir. 1994)); *see also Prowess*, 2013 WL 509021, at *5. To demonstrate that the common interest privilege applies, the

---

[7] Plaintiffs contend that the common interest privilege applies to all documents on their privilege log. Plaintiffs assert both the work product protection and the attorney-client privilege for many of the documents on the privilege log. The Court has already found that Plaintiffs did not waive the work product protection by disclosing the timelines to certain third parties.

proponent "must establish that *when* communications were shared among individuals with common legal interests, the act of sharing was part of an ongoing common legal enterprise." *Neuberger*, 230 F.R.D. at 416 (emphasis in original). In the Fourth Circuit, the proponent of the common interest privilege must produce evidence of an agreement between the individuals with the common legal interest. *In re Sanctuary Belize Litig.*, 2019 WL 6717771, at *3 (quoting *Am. Mgmt. Servs., LLC v. Dep't of the Army*, 703 F.3d 724, 733 (4th Cir. 2013)). While a written agreement is not required, and it is not necessary that "both parties to the communications at issue be co-parties in litigation," *Am. Mgmt. Srvs.*, 703 F.3d at 733 (citing *In re Grand Jury Subpoenas*, 902 F.2d 244, 249 (4th Cir. 1990)), "there must be an agreement or a meeting of the minds." *Id.*; *Hunton & Williams v. U.S. Dep't of Justice*, 590 F.3d 272, 285 (4th Cir. 2010) ("While agreement need not assume a particular form, an agreement there must be."); *Prowess*, 2013 WL 509021, at *5 (finding that because communications at issue occurred "well before any common interest agreement existed," they were not protected by the common interest privilege). "Mere 'indicia' of joint strategy as of a particular point in time are insufficient to demonstrate that a common interest agreement has been formed." *Hunton & Williams*, 590 F.3d at 285; *see also* Edna Sela Epstein, *The Attorney-Client Privilege and the Work-Product Doctrine* 1.III.3.G (5th ed. 2007) ("Some evidence that an agreement that a common interest was to be pursued must exist, even though there is no requirement that such an agreement must be memorialized in writing.")

Plaintiffs have not met their burden to demonstrate that the common interest privilege applies because they have not produced evidence of an actual agreement with any third parties. Even assuming that Plaintiffs had a common legal interest with the third parties when the communications were made, the common interest privilege cannot be found to apply in the absence of an agreement. No mention of any agreement is made in Plaintiffs' brief or in Mr. Hempel's

Declaration. Because there must be an agreement for the common interest privilege to apply, the Court concludes that it does not apply to the communications on Plaintiffs' privilege log. Accordingly, the common interest privilege does protect Plaintiffs' privileged communications from waiver.

### 1. Waiver of Attorney-Client Privilege for Withheld Documents

The parties do not dispute that if the common interest privilege does not apply, Plaintiffs' voluntary disclosure of the communications to third parties will amount to a waiver of the attorney-client privilege for those communications.[8] (*See* ECF Nos. 125 at 12; 140 at 5, 8; and 145 at 5.) *See generally United States v. Elbaz*, 396 F. Supp. 3d 583, 597 (D. Md. 2019); *Elat,* 2013 WL 4478190, at *2; *Neuberger*, 230 F.R.D. at 410. Accordingly, the attorney-client privilege does not shield any of the documents on Plaintiffs' privilege log from disclosure. With the exception of the timelines that are protected work product, Plaintiffs must produce all documents for which they claimed the attorney-client privilege.

### 2. Subject Matter Waiver

In their reply, Defendants argue that Plaintiffs' waiver of the attorney-client privilege is a subject matter waiver, and that Plaintiffs "must produce all documents from their entire privilege log involving the same subject matter." (ECF No. 145 at 5.) At this time, the Court declines to order Plaintiffs to "review all other documents they are withholding based on the attorney-client

---

[8] In some instances, courts have extended the attorney-client privilege to communications disclosed to third parties where the third party "is needed to facilitate communication between the client and the attorney." *Prowess*, 2013 WL 509021, at *3 (quoting *Black & Decker Corp. v. United States*, 219 F.R.D. 87, 90 (D. Md. 2003)). Plaintiffs have not argued that this derivative privilege applies in this case. And even if the Court construes Plaintiffs' arguments in the broadest sense, Plaintiffs have still failed to establish that any communications between Mr. and Mrs. Hempel and the third parties were "needed to facilitate communications" between Plaintiffs and their attorneys. *See id.*

privilege and produce any involving the same subject matter as the documents over which they claimed a common interest privilege." (*Id.* at 8.) Defendants first mentioned subject matter waiver in their reply brief; they did not raise it in their initial brief on the common interest privilege (ECF No. 125). Plaintiffs have not addressed the issue at all. There is support for Defendants' argument on subject matter waiver. *See United States v. Cohn*, 303 F. Supp. 2d 672, 679-80 (D. Md. 2003); *Elbaz*, 396 F. Supp. 3d at 598 (citing *In re Grand Jury Proceedings*, 727 F.2d at 1357); *Neuberger*, 230 F.R.D. at 410. There is also authority that calls the argument into question. *See Elat*, 2013 WL 4478190, at *6 (discussing subject matter waiver in connection with Fed. R. Evid. 502(a)). And there is no briefing on the law that applies to the issue of subject matter waiver under the present circumstances. *See* Fed. R. Evid. 501 ("[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."); Fed. R. Evid. 502 (stating the rules for waiver due to disclosures made in federal and state proceedings); *Cont'l Cas. Co. v. Under Armour, Inc.*, 537 F. Supp. 2d 761, 768 (D. Md. 2008) (discussing how the "application of Fed. R. Evid. 501 in civil cases can be tricky"); *see also* 23A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure, Evidence* § 5447 (1st ed. 2020).

The Court is uncertain what effect a finding of subject matter waiver might have on Plaintiffs. Perhaps Plaintiffs are not withholding any other documents that share the subject matter of the communications at issue in this opinion. But if they are this issue could be important to Plaintiffs. Because of the possible importance of this issue, and in the absence of adequate briefing, the Court declines to order Plaintiffs to produce any documents "involving the same subject matter as the documents over which they claimed a common interest privilege." At this time, the Court declines to make any finding on this issue at all.

## III.  Conclusion

For these reasons, the Court **ORDERS** as follows:

1. Defendants' Motion (*see* ECF Nos. 114 & 125 at 11-13) is **GRANTED IN PART** and **DENIED IN PART**.

2. Within 14 days of the date of this Order, Plaintiffs must produce all of the documents on their privilege log to Defendants, with the exception of the following documents:

HEMPEL000109804-HEMPEL000109827
HEMPEL000109829-HEMPEL000109852
HEMPEL000109890-HEMPEL000109922
HEMPEL000110012-HEMPEL000110031
HEMPEL000110094-HEMPEL000110113

The Motion is denied in all other respects.

August 24, 2020
Date

/s/
Timothy J. Sullivan
United States Magistrate Judge